```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:_05/26/2022_
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                            :

K.O., individually and on behalf of a I.E., a child with a   :
disability,                                       :
                                            :

                      Plaintiff,            :            20-cv-10277 (LJL)
                                           :

                   -v-                   :        OPINION AND ORDER
                                         :

NEW YORK CITY DEPARTMENT OF EDUCATION,   :
                                         :

                    Defendant.         :
                                         :
------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

       Plaintiff K.O. ("Plaintiff"), individually and on behalf of I.E., a child with a disability, moves for summary judgment, pursuant to Federal Rule of Civil Procedure 56, on a complaint seeking injunctive relief and attorneys' fees against defendant New York City Department of Education ("Defendant" or the "Department").  Dkt. No. 50.  Plaintiff brought this action pursuant to the provisions of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1414 *et seq.*, 42 U.S.C. § 12132, 42 U.S.C. § 1983, New York Education Law § 4404, and the federal and state regulations promulgated thereunder.  Dkt. No. 20 ¶ 1.

       For the following reasons, the motion for summary judgment is granted in part and denied in part.

## BACKGROUND

       The following facts, gleaned from the parties' Rule 56.1 statements and the administrative record in this case, are undisputed for purposes of this motion and are relevant to the Court's decision.

I.E. is a 16-year-old boy who has been classified as a student with a disability with a classification of autism.  Dkt. No. 54 ¶ 1.[1]  K.O. is I.E.'s parent.  *Id.* ¶ 3.  In 2018 and 2019, K.O., through counsel, initiated several impartial due process hearings for the school years 2017/18, 2018/19, 2019/20, and 2020/21.  *Id.* ¶¶ 12, 14, 41, 72–73, 126–28.  K.O. asserted that Defendant denied I.E. a free appropriate public education ("FAPE") for each of the years in question.  *Id.* ¶¶ 13, 73, 128.

## I.     Case Number 178593

### A.     Hearing

Case Number 178593 asserted that Defendant denied I.E. a FAPE during a portion of the 2017/18 and 2018/19 school years.  *Id.* ¶¶ 12–14.  Prior to the 2018/19 school year, I.E. attended a New York State-approved district school.  Dkt. No. 52-2 at 3.  On September 12, 2018, following a unilateral placement by K.O., I.E. began attending Gersh Academy, a private school for students with autism; Gersh Academy is not approved by the State of New York.  *Id.* at 4.

K.O. initiated Case Number 178593 on October 11, 2018, asking for reimbursement and/or direct payment of the tuition for I.E. to attend Gersh Academy; for I.E.'s Individualized Education Program ("IEP") to be amended to include ten hours per week of at-home instruction by a teacher trained in the Applied Behavior Analysis ("ABA") methodology; for Defendant to provide additional compensatory services of two hours of home-based instruction for every school day from April 17, 2018, through the earlier of the date of the impartial hearing officer's ("IHO's") decision or Defendant's agreement to provide such services; and for Defendant to provide additional compensatory services of make-up sessions for every session of counseling,

---

[1] For convenience, the Court will cite only to Dkt. No. 54, which is Plaintiff's Rule 56.1 statement, where Defendant responded that the statement was undisputed in its Rule 56.1 statement, Dkt. No. 57.

occupational therapy, and speech-language therapy not provided to I.E. during a portion of the

2017/18 school year for any reason other than his own absence from school.  Dkt. No. 54 ¶¶ 12,

14.

An impartial due process hearing was held for K.O. and I.E. on July 8, 2019 and

September 10, 2019.  *Id.* ¶ 16.  The hearing on July 8, 2019 lasted approximately an hour and a

half.  *Id.* ¶ 17.  Defendant's representative offered four exhibits into evidence but otherwise

chose not to defend its actions.  *Id.*; *see also* Dkt. No. 52-2 at 4.  Counsel for K.O. offered

fourteen exhibits and called two witnesses—the principal at Gersh Academy and K.O.  *See* Dkt.

No. 54 ¶ 17; Dkt. No. 52-2 at 4.  The hearing on September 10, 2019 lasted approximately an

hour and twenty minutes.  Dkt. No. 54 ¶ 22.  Counsel for K.O. submitted affidavits from the

director of Exceptional Results Agency, LLC, a provider of occupational therapy, physical

therapy, counseling, and speech/language therapy services, and from Lydia Jones, a New York

State-certified special education teacher who is trained in Applied Behavioral Analysis.  Dkt. No.

52-2 at 7.  The Defendant cross-examined one witness who was available and then made a

relevance objection—which was denied—as to the affidavit of the second witness who was not

available.  Dkt. No. 54 ¶¶ 19, 22–24; Dkt. No. 52-5.

The decision deadline was extended ten times on the consent of the parties.  Dkt. No. 52-

2 at 3.  On September 12, 2019, the IHO issued a Finding of Facts and Decision ("FOFD") in

K.O.'s favor, finding that Defendant failed to provide a FAPE to I.E. for the 2017/18 and

2018/19 school years.  Dkt. No. 54 ¶¶ 25–26.  The IHO ordered that Defendant directly pay

tuition to Gersh Academy and reimburse K.O. $50 and that Defendant fund compensatory

education to be provided by Exceptional Results Agency and by Lydia Jones.  *Id.* ¶ 28.  In

particular, the IHO found that the Department failed to carry its burden of proof, that K.O.

carried her burden of establishing that Gersh Academy placement was appropriate, and that equitable considerations supported the parent's claim.  Dkt. No. 52-2 at 7, 12.

### B.      Implementation

The parties appear to dispute the status of implementation efforts.  Plaintiff asserts that implementation efforts for the FOFD in Case Number 178593 remain ongoing in that Defendant has neither paid Exceptional Results Agency to provide services nor fully paid Lydia Jones for the services ordered by the IHO's FOFD.  Dkt. No. 54 ¶¶ 31–33.  The evidence cited in support of Plaintiff's assertions, however, paints a different picture.  The evidence shows that, on March 8, 2021, an employee at Exceptional Results Agency told Plaintiff's counsel that authorization had not been received but that Exceptional Results Agency later discovered authorizations that had been issued on February 5, 2020 to a different employee.  Dkt. No. 52 ¶ 10(e); Dkt. No. 52-13.  The evidence also shows that, on March 1, 2021, Defendant indicated that Jones's invoices seemed incomplete; that, on March 4, 2021, Jones sent corrected invoices; and that, on April 21, 2021, Defendant indicated that Jones's invoices would be processed that day.  Dkt. No. 52 ¶ 10(d), (e), (g).  In a declaration in support of the motion for summary judgment, Plaintiff's counsel asserts that "[t]o date, Ms. Jones has continued to inform me that she has not received payments," but counsel does not cite to any evidence in the record in support of this statement. *Id.* ¶ 10(g).

Defendant responds that there do not appear to be any outstanding, unpaid invoices for compensatory services.  Dkt. No. 57 ¶¶ 31–33; Dkt. No. 58 ¶¶ 12–13.

## II.    Case Number 185439

K.O., through counsel, initiated Case Number 185439 by a demand for due process hearing submitted on July 24, 2019.  Dkt. No. 54 ¶ 41.  K.O. complained that I.E.'s February 2018 IEP had relied upon a January 2, 2018 physical therapy ("PT") evaluation that

recommended that PT services be discontinued and mandated only a single 30-minute session of individual PT services per week.  Dkt. No. 52-31.  The due process complaint asserted that, in a February 2019 letter, K.O. had expressly disagreed with the January 2018 evaluation (after Gersh Academy had recommended a greater frequency of PT services) and requested that an independent PT evaluation be conducted at public expense by a by a licensed physical therapist of Artistic Quality Therapy Associates ("AQTA").  Dkt. No. 52-31; Dkt. No. 54 ¶¶ 37–39.  Defendant had neither agreed to fund the independent educational evaluation ("IEE") nor filed a due process complaint to defend its January 2018 PT evaluation of I.E.  Dkt. No. 54 ¶ 42; Dkt. No. 52-31.[2]  K.O. asked that the IHO order Defendant to authorize an independent PT evaluation at public expense and to authorize payment for reasonable transportation for K.O. and I.E. to travel to and from AQTA and that the IEP team be reconvened after receiving the report from the independent PT expert.  Dkt. No. 54 ¶ 43; Dkt. No. 52-31.

The impartial due process hearing on Case Number 185439 was also held on September 10, 2019.  Dkt. No. 54 ¶ 51.  It lasted five minutes.  *Id.*  K.O.'s counsel submitted nine exhibits into the record, including affidavits from I.E.'s PT providers and a rate justification affidavit from the proposed independent PT evaluator.  *Id.* ¶ 54.  Defendant's representative did not submit evidence but stated that the Defendant was "standing by the fact that the District did discontinue physical therapy."  *Id.* ¶ 53; Dkt. No. 52-33 at 8.  On or about September 26, 2019, the IHO issued a FOFD for Case Number 185439, finding in K.O.'s favor and granting K.O. the

---

[2] Under regulations of the Commissioner of Education, if a parent disagrees with an evaluation obtained by the school district, the parent has a right to obtain an independent evaluation at public expense.  If the parent requests an independent educational evaluation at public expense, the school district must, without unnecessary delay, either ensure an independent evaluation is provided at public expense or initiate an impartial hearing to show that its evaluation is appropriate or that the evaluation obtained by the parent does not meet the school district criteria. N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5.

full relief requested, including that Defendant pay the cost of the independent physical therapy evaluation by AQTA in an amount not to exceed $1,500, as well as transportation to and from the evaluation, and consider the results of the evaluation as part of I.E.'s IEP.  Dkt. No. 54 ¶¶ 57–58.

## III.    Case Number 185174

On July 9, 2019, K.O., through counsel, initiated an impartial due process hearing for Case Number 185174.  *Id.* ¶ 72.  The due process complaint stated that, while I.E.'s IEP team had held a meeting at which the Department recommended changing I.E.'s placement from Gersh Academy to the New York State-approved District school I.E. previously had attended, Defendant had not issued either an IEP or a placement letter for the 2019/20 year.  Dkt. No. 52-16.  The Demand for a Due Process Hearing alleged that Defendant denied I.E. a FAPE for the 2019/20 school year, and asked for an order that, among other things, would find that I.E. was denied a FAPE, find that Gersh Academy was an appropriate placement for I.E. for the 2019/20 school year, and order Defendant to pay the tuition and related costs, including transportation, for I.E. to attend Gersh Academy for the 2019/20 school year.  Dkt. No. 54 ¶¶ 73–74; Dkt. No. 52-16.

An impartial hearing on the merits was held in Case Number 185174 on March 18, 2020.[3]  Dkt. No. 54 ¶ 95; Dkt. No. 52-24.  The hearing lasted approximately an hour and twenty minutes.  Dkt. No. 54 ¶ 102.  Plaintiff submitted twenty-five exhibits, including an affidavit for one of Plaintiff's two witnesses, and K.O. testified by phone for direct examination, cross

---

[3] There were extensive discussions about the timing of the hearing and whether it would be consolidated with Case Number 1845439.  Dkt. No. 54 ¶¶ 76–92.  The details of those discussions are not relevant to the Court's decision and thus are not recounted here.

examination, re-direct examination, and re-cross examination. *Id.* ¶¶ 98–100. In addition, Defendant conducted cross and re-cross examination of Plaintiff's affidavit witness. *Id.* ¶ 100.

On April 17, 2020, the IHO issued a FOFD in favor of K.O., finding—among other things—that I.E. was denied a FAPE for the 2019/20 school year and that Gersh Academy was an appropriate placement and ordering Defendant to pay the tuition and related services including transportation for the 2019/20 school year at Gersh Academy. *Id.* ¶¶ 106–112; Dkt. No. 52-17. The IHO also ordered the Committee on Special Education ("CSE") to develop a new IEP for I.E. that would include transportation (including an air-conditioned mini-bus with a medical/crisis paraprofessional to accompany the student to and from school), home ABA services, physical, occupational and speech/language therapy. Dkt. No. 54 ¶¶ 111; Dkt. No. 52-17.

## IV.   Case Number 196238[4]

### A.   Hearing

On July 7, 2020, K.O. submitted, through counsel, a Demand for a Due Process Hearing to the IHO, which became Case Number 196238. Dkt. No. 54 ¶¶ 126–127. K.O. alleged that Defendant denied I.E. a FAPE for the 2020/21 school year. *Id.* ¶ 128. The Demand for a Due Process Hearing alleged, among other things, that Defendant failed to comprehensively evaluate I.E. for changes to his program; that Defendant failed to timely develop and provide K.O. with an IEP for the 2020/21 school year, an appropriate placement for that school year, or an appropriate program for that school year; and that Defendant predetermined that appropriate private schools, such as Gersh Academy, would not be recommended. *Id.* ¶ 129. Among other things, K.O. asked that the IHO find that I.E. was denied a FAPE for the 2020/21 school year

---

[4] Plaintiff's Rule 56.1 statement incorrectly refers to this case as 196236. *See, e.g.*, Dkt. No. 54 at 18.

and that Gersh Academy was an appropriate placement for I.E. for the 2020/21 school year, and order that Defendant pay the tuition and related costs, including transportation, for I.E. to attend Gersh Academy for that year. *Id.* ¶ 130; Dkt. No. 52-36.

On December 10, 2020, Plaintiff served Defendant with a summons and complaint from the instant lawsuit. *Id.* ¶ 140. The following month, after significant delay, an IHO was appointed. *Id.* ¶ 142. An impartial due process hearing was held for Case Number 196238 on January 19, 2021. *Id.* ¶ 145; Dkt. No. 52-39. The hearing lasted for about an hour and twenty minutes. Dkt. No. 54 ¶ 145. Plaintiff presented thirty-six exhibits, which included a tuition affidavit from Gersh Academy and two witness affidavits. *Id.* ¶ 148. Defendant cross-examined Plaintiff and the Executive Director of Gersh Academy. *Id.* ¶ 149. The IHO issued an Order on Pendency, dated January 22, 2021, retroactive to July 7, 2020 (the date of the hearing request), ordering that Defendant fund I.E.'s tuition at Gersh Academy for the 2020/21 school year. *Id.* ¶ 151.

On March 2, 2021, the IHO issued its FOFD, dated February 28, 2021. *Id.* ¶ 154; Dkt. No. 52-37. The FOFD found that Defendant failed to offer I.E. a FAPE for the 2020/21 school year and that Plaintiff was entitled to tuition payments by Defendant for I.E.'s 2020/21 school year at Gersh Academy, with equitable considerations supporting the award of tuition reimbursement. Dkt. No. 54 ¶ 155. It also ordered that an independent vocational assessment and a PT evaluation be conducted by qualified evaluators and that Defendant shall ensure that I.E.'s IEP is properly coded to provide transportation to and from school, for home ABA services, and for physical, occupational, and speech/language therapy. *Id.* ¶ 156.

### B.    Implementation

The parties appear to dispute whether Defendant has complied with all of the terms of the FOFD in Case Number 196238. *Id.* ¶ 170; Dkt. No. 57 ¶ 170. Plaintiff states that Defendant has

not funded I.E.'s awarded independent vocational assessment.  Dkt. No. 54 ¶ 162.  The only

evidence cited by Plaintiff for this contention, however, is the following statement in a

declaration by Plaintiff's counsel in support of the motion:  "I have conferred with Kid Success,

Inc., which has informed me that its authorization was received on July 15, 2021, for the

independent vocational assessment and that the agency needs to reschedule a portion of the

assessment for it to be completed."  Dkt. No. 52 ¶ 35.  Defendant responds that no invoices have

been received for a vocational assessment even though payment was authorized on July 15,

2021.  Dkt. No. 57 ¶ 162; Dkt. No. 58 ¶ 28.

## PROCEDURAL HISTORY

This lawsuit was commenced by complaint filed on December 7, 2020.  Dkt. No. 1.  An

amended complaint was filed on December 9, 2020.  Dkt. No. 10.  The Second Amended

Complaint was filed on March 30, 2021.  Dkt. No. 20.[5]  On February 25, 2022, Plaintiff filed her

motion for summary judgment along with accompanying declarations, a Rule 56.1 statement,

and a memorandum of law in support of the motion.  Dkt. Nos. 50–54.  On April 11, 2022,

Defendant filed its memorandum of law in opposition to the motion for summary judgment along

with declarations and a counterstatement to the Rule 56.1 statement.  Dkt. Nos. 57–61, 63.  On

April 29, 2022, Plaintiff filed a reply memorandum of law along with two reply affirmations.

Dkt. Nos. 72–74.  The Court ordered Defendant to submit a declaration addressing the additional

hours performed by Plaintiff after the submission of the motion for summary judgment and for

---

[5] A notice was issued to counsel that the Second Amended Complaint was a deficient pleading because counsel failed to obtain consent or to move pursuant to Federal Rule of Civil Procedure 15.  The parties, however, have treated the Second Amended Complaint as the operative complaint, and it was filed early in the litigation.  The Court too treats the Second Amended Complaint as the operative complaint.

which Plaintiff seeks attorneys' fees.  Dkt. No. 76.  Defendant filed the requested declaration on

May 13, 2022.  Dkt. No. 80.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), a court "shall grant summary judgment if

the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*,

477 U.S. 317, 322–23 (1986).  "A genuine issue of material fact exists if 'the evidence is such

that a reasonable jury could return a verdict for the nonmoving party.'"  *Nick's Garage, Inc. v.*

*Progressive Cas. Ins. Co.*, 875 F.3d 107, 113–14 (2d Cir. 2017) (quoting *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "The movant bears the burden of 'demonstrat[ing] the

absence of a genuine issue of material fact.'"  *Id.* at 114 (quoting *Celotex*, 477 U.S. at 323).  In

deciding a motion for summary judgment, the Court must "construe the evidence in the light

most favorable to the non-moving party, and draw all reasonable inferences in its favor."

*Gilman v. Marsh & McLennan Cos., Inc.*, 826 F.3d 69, 73 (2d Cir. 2016).

If the movant meets its burden, "the nonmoving party must come forward with

admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary

judgment."  *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008).  It may not rely

on "mere speculation or conjecture as to the true nature of the facts," *Hicks v. Baines*, 593 F.3d

159, 166 (2d Cir. 2010) (citation omitted), or "on the allegations in [its] pleading, or on

conclusory statements, or on mere assertions that affidavits supporting the motion are not

credible," *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citation omitted).

Rather, to survive a summary judgment motion, the opposing party must establish a genuine

issue of fact by "citing to particular parts of materials in the record," Fed. R. Civ. P. 56(c)(1)(A),

and demonstrating more than "some metaphysical doubt as to the material facts," *Matsushita*

*Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).  If "the party opposing summary judgment propounds a reasonable conflicting interpretation of a material disputed fact," summary judgment must be denied.  *Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 9–10 (2d Cir. 1983).

## DISCUSSION

Plaintiff moves for summary judgment.  Dkt. No. 50.  Plaintiff argues that the Court should grant the motion and (1) order Defendant to complete implementation of the FOFD in Case Numbers 178593 and 196238; (2) declare that the Department's policies, practices, and procedures regarding implementation of FOFDs are illegal and/or invalid and have discriminated against I.E. and similarly situated students; (3) order the Department to establish one or more systems ensuring timely payment of the Department's obligations for pendency and under the FOFDs and ensuring timely appointment of IHOs; (4) find that the Department unreasonably protracted final resolution of each of the four cases as well as the final resolution of this action; and (5) award fees and costs to Plaintiff.  Dkt. No. 53 at 30.  The Court addresses first Plaintiff's request for equitable and declaratory relief.  It then turns to the question of attorneys' fees and costs.

## I.      The Requests for Equitable and Declaratory Relief

Plaintiff's Second Amended Complaint seeks an order granting her equitable relief and specific enforcement pursuant to 42 U.SC. § 1983 and the IDEA for Defendant's alleged failure to comply with the terms of the FOFD's in Case Numbers 178593, 185174, and 196238.  Dkt. No. 20 ¶¶ 186–192 (first cause of action), 193–196 (second cause of action).[6]  In her motion for

---

[6] Plaintiff also alleges that Defendant has violated I.E.'s rights under Title II of the Americans with Disabilities Act of 1990 ("ADA"), in part by failing to fully implement the FOFD's for I.E., and seeks an order directing Defendant to establish a system to pay its obligations under FOFD's within 30 days of initially being ordered.  Dkt. No. 20 ¶¶ 197–210 (third cause of action).

summary judgment, Plaintiff somewhat narrows her claim.  Plaintiff asks that the Court order

Defendant to implement the FOFDs in Case Numbers 178593 and 196238; declare that the

Department's policies, practices and procedures regarding implementation of FOFDs are illegal

and/or invalid and have discriminated against I.E. and similarly situated students; and order the

Department to establish one or more systems ensuring timely payment of the Department's

obligations for pendency and under the FOFDs and ensuring timely appointment of IHOs.  Dkt.

No. 53 at 30.

A number of district courts in this Circuit have held, and Defendant does not dispute, that

the Court has the power to enter an order forcing implementation of an IHO's decision under 42

U.S.C. § 1983.  *See, e.g.*, *Rutherford v. Florida Union Free Sch. Dist.*, 2019 WL 1437823, at *25

(S.D.N.Y. Mar. 29, 2019); *M.H. v. N.Y.C. Dep't of Educ.*, 2021 WL 4804031, at *31 (S.D.N.Y.

Oct. 13, 2021); *A.T. v. N.Y. State Educ. Dep't*, 1998 WL 765371, at * 7 (E.D.N.Y. Aug. 4, 1998).

"Limiting the actions plaintiffs might take to force implementation of an IHO's decision can only

reduce the urgency school districts would attribute to the implementation of an IHO's decision

and thereby lessen the credibility of the IHO process.  To uphold the IDEA's purpose of

providing educational services to disabled children, parents must be able to choose litigation if

they believe that is necessary to effectively enforce orders given by IHOs."  *Rutherford*, 2019

---

Plaintiff also seeks a declaration that Defendant's policies, practices, and procedures regarding
implementation of FOFDs are illegal and/or invalid and in contravention of Defendant's duties
under the IDEA, *id.* ¶¶ 211–216 (fourth cause of action), as well as a declaration that Defendant
unreasonable protracted final resolution of Case Numbers 178593, 185439, 185174, and 196238,
*id.* ¶¶ 217–225 (fifth cause of action).  For the awarded independent vocational assessment and
associated transportation to and from the appointments for that assessment, Plaintiff seeks
placement of the cash amount equivalent to be paid into a trust for the benefit of such services.
*Id.* ¶¶ 226–238 (sixth cause of action).

WL 1437823, at *25 (quoting *SJB ex rel. Berkhout v. N.Y.C. Dep't of Educ.*, 2004 WL 1586500, at *4 (S.D.N.Y. July 14, 2004) (collecting cases)).

Plaintiff has not established entitlement to summary judgment on her claims for equitable and declaratory relief. Indeed, the claims appear to be moot. *See Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 486 (2d Cir. 2002) (noting claims that appear to be moot). With respect to the FOFD in Case Number 178593, Plaintiff contends that Defendant sent funding authorization to the incorrect person at Exceptional Results Agency and that Defendant forestalled invoice payments to Lydia Jones. Dkt. No. 53 at 7–8. Plaintiff, however, has not shown how the funding authorization issue with Exceptional Results Agency, which appears to have been resolved, requires equitable relief. Further, although Plaintiff asserts that Defendant forestalled payments to Lydia Jones and that she still has outstanding invoices for service hours, Plaintiff submits no evidence in support of that allegation.[7] *See M.H.*, 2021 WL 4804031, at *32 (granting summary judgment to defendant where plaintiff offered no evidence to support that defendant had failed to comply with FOFD). Based on the record before the Court on this motion, there is no relief that the IHO ordered in Case Number 178593 that K.O. and I.E. have yet to receive. Similarly, for Case Number 196238, Plaintiff argues that the independent vocational assessment ordered by the FOFD has not been funded. Dkt. No. 53 at 8. But the record reveals that Defendant has authorized payment and that the provider had not completed the assessment. Defendant also submits that no invoices have been received for the vocational assessment. Accordingly, the Court rejects Plaintiff's request for equitable relief with respect to Case Number 196238.

---

[7] Plaintiff asserts that "K.O. has shown that I.E. has 82 hours of ABA/SETSS remaining (as contrasted with Mr. Sullivan's stated 'approximately 68.8 hours')," Dkt. No. 72 at 6, but does not dispute that all invoices that have been submitted to Defendant have been paid.

Plaintiff requests a declaration from the Court that the Department's policies, practices, and procedures regarding implementation of FOFDs are illegal and/or invalid and have discriminated against I.E. and similarly situated students under the Americans with Disabilities Act ("ADA") but does not offer evidence in support of that request.  "The standards for claims under the ADA and under Section 504 of the Rehabilitation Act are essentially the same." *Bowen v. Rubin*, 385 F. Supp. 2d 168, 179 (E.D.N.Y. 2005) (citing *Henrietta D. v. Bloomberg*, 331 F.3d 261, 273 (2d Cir.2003), *cert. denied*, 541 U.S. 936 (2004)).  "Because the ADA and Section 504 'address discrimination against disabled students, rather than incorrect or erroneous special education treatments, as in the case of [the] IDEA,' there must be 'something more than a mere violation of the IDEA . . . in order to show a violation of [either statute] in the context of educating children with disabilities.'"  *Rutherford*, 2019 WL 1437823, at *34 (alteration in original) (quoting *Scaggs v. New York State Dep't of Educ.*, 2007 WL 1456221, at *15 (E.D.N.Y. May 16, 2007) (Bianco, J.)); *see also Cianciotto on behalf of D.S. v. N.Y.C. Dep't of Educ.*, 2022 WL 1204788, at *17 (S.D.N.Y. Apr. 22, 2022) ("[B]ecause the Rehabilitation Act addresses 'discrimination against disabled students, rather than failures to provide special education services, a claim [based on] a denial of a FAPE brought under [Section 504] requires 'something more than a mere violation of the IDEA.'" (alterations in original) (quoting *T.J. on behalf of B.W. v. Bd. of Educ. of Mt. Vernon City Sch. Dist.*, 2019 WL 13170168, at *14 (S.D.N.Y. Sept. 30, 2019))).  "That 'something more' is evidence that the defendant acted with 'bad faith or gross misjudgment." *Id.* (quoting *T.J.*, 2019 WL 13170168, at *14).  "[I]ntentional discrimination may be inferred when a school district acts with gross negligence or reckless indifference in depriving a child of access to a FAPE." *Rutherford*, 2019 WL 1437823, at *34.

The undisputed facts offered by K.O. do not establish the requisite "something more." Plaintiff argues that "DOE excluding I.E. from the benefits of IDEA due process proceedings and determinations violated the ADA" and that "the Court does not need any further showing." Dkt. No. 72 at 7.  Although the evidence does tend to show that, for each succeeding school year after an IHO determined that Gersh Academy was an appropriate placement, K.O. had to initiate a due process hearing to secure that Gersh Academy would be determined still to be an appropriate placement and would be paid under the IDEA, Plaintiff has not offered undisputed evidence to establish that the Department acted in bad faith or with gross negligence and that she is entitled to declaratory relief.  Accordingly, her motion for summary judgment in that regard must be denied.[8]

Finally, Plaintiff asks that the Court order Defendant to establish one or more systems ensuring timely payment of the Department's obligations for pendency and under FOFDs and ensuring timely appointment of IHOs.  The Court has authority to order prospective equitable relief where a child has not received the "educational services the child should have received in the first place."  *Doe v. East Lyme Bd. of Educ.*, 962 F.3d 649, 659 (2d Cir. 2020); *see also Streck v. Bd. Of Educ. of the E. Greenbush Cent. Sch. Dist.*, 408 F. App'x 411, 415 (2d Cir. 2010) (summary order).  In this case, however, after the impartial due process hearings, I.E. did receive the educational services ordered in the FOFDs and, while K.O. paid $50 towards the cost of her child's education, that sum has been reimbursed, and the Court was not necessary for Plaintiff to receive any of the other relief to which she was entitled.  Accordingly, no basis appears on the record for the Court to order Defendant in this case to establish systems to ensure

---

[8] Defendant also argues that exhaustion was required.  Dkt. No. 63 at 15.  Because Plaintiff is not entitled to relief on the ADA claim even if exhaustion were not required, the Court does not reach the issue.

the timely payment of any obligations for I.E.  *See M.H.*, 2021 WL 4804031, at *33 (denying similar request).

## II.   The Attorneys' Fees Request

"The IDEA aims 'to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs.'"  *A.R. ex rel. R.V. v. N.Y.C. Dep't of Educ.*, 407 F.3d 65, 72 (2d Cir. 2005) (quoting 20 U.S.C. § 1400(d)(1)(A)).  To that end, the statute provides that "the court, in its discretion, may award reasonable attorneys' fees as part of the costs to a prevailing party who is the parent of a child with a disability."  20 U.S.C. § 1415(i)(3)(B)(i), (i)(I).

K.O. is the prevailing party in this case.[9]  Counsel for K.O. performed a service for the parent and for the child and vindicated the intent of Congress in ensuring that I.E. receive the free appropriate public education guaranteed by the IDEA, and counsel is entitled to a reasonable attorneys fee and costs.  Before counsel represented K.O. and I.E., I.E. did not have an appropriate IEP.  After counsel intervened, and as a result of counsel's efforts, I.E. received an appropriate education at Gersh Academy and—from the findings of the IHO—obtained substantial benefits from that education.  Counsel deserves an appropriate fee as well as reimbursement for costs.  The question remains: What is the appropriate fee?

Plaintiff seeks $153,485.39 in attorneys' fees and costs.  Dkt. No. 73 ¶ 60.  It arrives at those figures, in part, by asking the Court to calculate a reasonable attorneys' fee for Andrew Cuddy, Michael Cuddy, and Jason Sterne of $550 an hour, Kenneth Bush at $425 an hour, Benjamin Kopp at $400 an hour, and Raul Valez at $375 an hour.  Dkt. No. 54 ¶¶ 184–186, 188–189, 191.  Plaintiff claims paralegals should be compensated at a rate of $225 an hour.  Dkt. No.

---

[9] Defendant concedes "there is no dispute that Plaintiffs are entitled to an award of reasonable attorneys' fees and costs."  Dkt. No. 63 at 1.

73 ¶ 60.  Plaintiff then multiplies those rates by 208.25 attorney and paralegal hours worked on the administrative phases of the case and 161.9 hours of attorney and paralegal time on the federal component.  *Id.*

Defendant, by contrast, argues that Plaintiff's request should be substantially reduced. Defendant argues that the reasonable hourly rates for Andrew Cuddy, Michael Cuddy, and Jason Sterne should be adjusted to no more than $360 an hour, Dkt. No. 63 at 17–18; the reasonable hourly rate for Kenneth Bush and Benjamin Kopp should be no more than $250 an hour, *id.* at 18; the reasonable hourly rate for Raul Velez should be no more than $200 an hour, *id;* and the reasonable hourly rate for experienced paralegals (Sarah Woodward and Shobna Cuddy) should be no more than $125 an hour and less experienced paralegals no more than $100 an hour, *id.* at 19.  It also argues that the hours for both the administrative hearing phase and the federal phase are excessive.  *Id.*  It highlights, for example, 28.7 hours billed on the federal matter that were excessive and should be written off including 26.7 hours on the summary judgment briefing (reducing the hours from 48.2 to 21.5) and two hours for administrative tasks performed by Benjamin Kopp.  *Id.* at 24–25.

The Court first considers the appropriate hourly rate to calculate a fee award.  It then turns to the hours billed.

### A.    Hourly Rate

The statute mandates that the fees awarded "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished" and that "[n]o bonus or multiplier may be used in calculating the fees awarded."  20 U.S.C. § 1415(i)(3)(C); *see also S.J. v. N.Y.C. Dep't of Educ.*, 2022 WL 1409578, at *1 (2d Cir. May 4, 2022) ("Such fees must be 'reasonable' and 'based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished.'" (quoting

*A.R. ex rel. R.V.*, 407 F.3d at 79)).  The IDEA's definition of a "reasonable attorney's fee" is interpreted consistently with other civil rights fee-shifting statutes.  *See A.R. ex rel. R.V.*, 407 F.3d at 75 ("[W]e 'interpret the IDEA fee provisions in consonance with those of other civil rights fee-shifting statutes.'" (quoting *I.B. ex rel. Z.B. v. N.Y.C. Dep't of Educ.*, 336 F.3d 79, 80 (2d Cir. 2003) (per curiam))); *see also S.N. ex rel. J.N. v. Pittsford Cent. Sch. Dist.*, 448 F.3d 601, 604 (2d Cir. 2006).  "Within this framework, district courts 'determin[e] a reasonably hourly rate by considering all pertinent factors, including the *Johnson* factors [as articulated in *Johnson v. Georgia Hwy. Express Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 109 (1989)], and then multiply[] that rate by the number of hours reasonably expended to determine the presumptively reasonable fee.'" *S.J.*, 2022 WL 1409578, at *1 (alterations in original) (quoting *Lilly v. City of New York*, 934 F.3d 222, 230 (2d Cir. 2019)).  In determining a reasonable fee, "the district court must ascertain whether 'the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" *Chambless v. Masters, Mates & Pilots Pension Plan*, 885 F.2d 1053, 1058–59 (2d Cir. 1989) (emphasis omitted) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)).  "The reasonable hourly rate is the rate a paying client would be willing to pay . . . bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Ortiz v. City of New York*, 843 F. App'x 355, 359 (2d Cir. 2021) (summary order) (alteration in original) (quoting *Lilly*, 934 F.3d at 231.  As noted, the Court also considers the following *Johnson* factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the

time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Lilly*, 934 F.3d at 228.

The reasonable attorneys' fees for counsel from the Cuddy Law Firm ("CLF") is well-trodden ground in this District. Numerous judges have weighed in, with different figures. For example, for Andrew Cuddy, the hourly rate determined to be reasonable has ranged from $550 at the extreme high end, *see Y.G. v. New York City Dep't of Educ.*, 2022 WL 1046465, at *2 (S.D.N.Y. Apr. 7, 2022), to $400 an hour, to $360 or $350 an hour, *see* Dkt. No. 63 at 7–10 (citing cases). The reported decisions also contain a range of reasonable rates for midlevel and junior associates of CLF and other firms that practice in the area from $400 for Benjamin Kopp in *Y.G.*, 2022 WL 1046465, at *2, to $300 or $280 in other cases, to $200 for the most junior associates, *see* Dkt. No. 63 at 7–10 (citing cases). The Second Circuit has recently affirmed the fee award in *S.J.* in which, for work performed in connection with a single hearing in 2018 and follow-up federal litigation for fees thereafter, Judge Schofield calculated a reasonable hourly rate for Andrew Cuddy and Michael Cuddy of $360 an hour, Benjamin Kopp of $200 an hour, and a senior paralegal of $125 an hour, although it has also taken pains to point out that the calculation of the appropriate fee award resides in the discretion of the district court and that its review is "highly deferential." *S.J. v. N.Y.C. Dep't of Educ.*, 2022 WL 1409578, at *1 (2d Cir. May 4, 2022) (quoting *McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006) (per curiam)); *see also S.J. v. N.Y.C. Dep't of Educ.*, 2021 WL 100501, at *4 (S.D.N.Y. Jan. 12, 2021); *S.J. v. N.Y.C. Dep't of Educ.*, 2021 WL 536080, at *1 (S.D.N.Y. Jan. 25, 2021).

The Court concludes that the appropriate rate for Andrew Cuddy is $420 an hour, for Jason Sterne and Michael Cuddy is $400 an hour, and for Benjamin Kopp and Kenneth Bush is $250 an hour.  For Raul Velez, the appropriate rate is $200 an hour.  Consistent with the Court's prior opinions, the Court will award fees at a rate of $125 an hour for the time of paralegals Shobna Cuddy and Sarah Woodard and $100 an hour for the other paralegals.  Those rates are consistent with the rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished and with those the Court has found reasonable in the past for comparable work performed in the roughly comparable time period.  *See S.H. v. N.Y.C. Dep't of Educ.*, 2022 WL 254070, at *6 (S.D.N.Y. Jan. 26, 2022).

These rates also are consistent with the seniority and experience level of each of the professionals.  Andrew Cuddy has been employed in CLF's law firm since 1996, Michael Cuddy since 2009, Benjamin Kopp since 2018; Jason Sterne was employed at CLF from 2005 to 2020, and Kenneth Bush was employed at CLF from 2016 to 2019.  Dkt. No. 51 ¶¶ 63, 65.  Raul Velez was admitted to practice only in August 2019 after graduating from law school in 2018.  *Id.* ¶¶ 65, 68.  As to the paralegals, Sarah Woodward and Shobna Cuddy are relatively senior; the others are junior.  *Id.* ¶¶ 70, 73.

The rates further are consistent with the *Johnson* factors.  The Court accepts Plaintiff's argument that counsel frequently is required in due process hearings notwithstanding that Defendant itself is not represented by counsel.  *See* Dkt. No. 73 ¶¶ 6–10; *see also D.B. ex rel. S.B v. N.Y.C. Dep't of Educ.*, 2019 WL 6831506, at *4 (S.D.N.Y. Apr. 22, 2019) (referencing "the need for parents of children with special needs to obtain specialists in this area to effectively litigate their claims").  Congress intended to incent attorneys to act as private attorneys-general to vindicate the policies of the IDEA.  *See Fox v. Vice*, 563 U.S. 826, 833 (2011).  It is relevant

that CLF took the matter on a contingency basis and assumed some risk.  *See K.F. v. N.Y.C. Dep't of Educ.*, 2011 WL 3586142, at *4 (S.D.N.Y. Aug. 10, 2011) ("Mr. Cuddy's willingness to take the case on a contingency fee basis is also a factor weighing in his firm's favor."), *adhered to as amended*, 2011 WL 4684361 (S.D.N.Y. Oct. 5, 2011).  The results obtained are relevant and further argue for a fee higher than that proposed by Defendant.  *See S.J.*, 2021 WL 100501, at *4 ("[T]he hourly rates should reflect that counsel secured the relief Plaintiff requested in the underlying administrative proceeding, which is 'the most critical factor' when determining a fee award." (quoting *C.B. v. N.Y.C. Dep't of Educ.*, 2019 WL 3162177, at *11 (S.D.N.Y. July 2, 2019))); *G.T. v. N.Y.C. Dep't of Educ.*, 2020 WL 1516403, at *5 (S.D.N.Y. Feb. 12, 2020) (stating that most critical factor is the degree of success obtained by plaintiffs' counsel), *report and recommendation adopted*, 2020 WL 1503508 (S.D.N.Y. Mar. 30, 2020).

At the same time, however, the questions presented were not particularly novel or complex, and, particularly after the first due process hearing when the IHO determined that Gersh Academy was an appropriate placement, the arguments and work at the subsequent hearings and in connection with subsequent due process complaints were somewhat rote.  *See H.C. v. N.Y.C. Dep't of Educ.*, 2021 WL 2471195 at *6 (S.D.N.Y. June 17, 2021) (assigning rate of $360 an hour to Michael Cuddy, Andrew Cuddy, and Jason Sterne where "the proceedings were ultimately minimally contested"); *K.F.*, 2011 WL 3586142, at *3 ("This case, however, was neither novel nor complex.").  Although CLF is entitled to some return on its investment in legal capital and the approved rate must be sufficient to attract others to the practice, it nonetheless also is true that the CLF attorneys involved were able to recycle work that the firm

previously had performed in order to deliver these services to K.O. and I.E.  The case was not particularly unattractive.[10]

Finally, the fee must not be so disproportionate to rates available elsewhere in the market so as to deter others from entering the field.  "[T]he fee-shifting feature of the IDEA—including the authority to award reasonable fees for the fee application itself—plays an important role in 'attract[ing] competent counsel' to a field where many plaintiffs with meritorious cases could not afford to pay such counsel themselves."  *G.T.*, 2020 WL 1516403, at \*10 (second alteration in original) (quoting *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 176 (2d Cir. 2009)).  In particular, "[i]n evaluating the reasonableness of the fee, the court, among all other factors, should be sensitive to an adequate incentivization of counsel to take these cases."  *Y.G.*, 2022 WL 1046465, at \*1.  The purpose of allowing attorneys' fees in a civil rights action "is to ensure effective access to the judicial process for persons with civil rights grievances."  *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (internal quotation marks omitted).  "When a plaintiff succeeds in remedying a civil rights violation, . . . he serves 'as a "private attorney general," vindicating a policy that Congress considered of the highest priority.'"  *Fox*, 563 U.S. at 833 (quoting *Newman v. Piggie Park Enterps., Inc.*, 390 U.S. 400, 402 (1968) (per curiam)).  The rates suggested by Defendant, particularly in an environment where attorneys' fees generally have been on the rise, are not sufficient in the Court's judgment to further that important purpose.

---

[10] "A district court need not recite and make separate findings as to all twelve *Johnson* factors, provided that it takes each into account in setting the attorneys' fee award."  *C.D. v. Minisink Valley Cent. Sch. Dist.*, 2018 WL 3769972, at \*4 (S.D.N.Y. Aug. 9, 2018) (quoting *E.F. ex rel. N.R. v. N.Y.C. Dep't of Educ.*, 2014 WL 1092847, at \* 3 (S.D.N.Y. Mar. 17, 2014)); *see also C.B.*, 2019 WL 3162177, at \*5 (same).  The Court has taken all of the factors into account, either in this recitation or elsewhere in the Opinion.

The rates are lower than those requested by Plaintiff and advocated for in the expert report of Steven Tasher ("Tasher").  That report is of limited weight.  Tasher's conclusion that the rates proposed by CLF are reasonable offers advice on an ultimate issue before the Court and thus is not admissible.  *See Hygh v. Jacobs*, 961 F.2d 359, 363–64 (2d Cir. 1992).  Moreover, to the extent that Tasher's declaration does more than put factual evidence of fees charged before the Court and purport to express an opinion either on the reasonableness of rates or the reasonableness of hours, Tasher has not demonstrated he has any particular expertise on the issue of IDEA litigation and that opinion would be of limited weight.  The underlying facts Tasher relies on do not support that CLF's requested rates are reasonable.  CLF's engagement letters are relevant to the *Johnson* factor regarding the firm's customary rate, but—assuming that they established a customary rate—that is only one of the *Johnson* factors.  The question before the Court is not whether CLF has been able to extract higher fees from paying clients than that which the Court has approved here but whether the fees it charges are the prevailing rates in the community.  *See M.H.*, 2021 WL 4804031, at *7.  "The reasonable hourly rate is the rate a paying client would be willing to pay 'bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively.'"  *Ortiz*, 843 F. App'x at 359 (alteration in original) (quoting *Lilly*, 934 F.3d at 231).  The fact that certain clients might have agreed at a point in the past that CLF should be paid at a particular rate does not establish that rate is reasonable.  *See M.H.*, 2021 WL 4804031, at *11.  "On a fee-shifting application . . . , the governing test of reasonableness is objective; it is not dictated by a particular client's subjective desires or tolerance for spending."  *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 52 (S.D.N.Y. 2015).  As to the three law firms Tasher mentions, the evidence before the Court fails

to establish the work that they did was comparable to the work CLF was required to do in this case.

Finally, the evidence of fees sought in other cases is of limited weight "because the . . . evidence either does not substantiate such rates were actually paid (versus claimed), or where rates are asserted to have been actually paid, does not provide relevant context for such rates billed." *S.J.*, 2021 WL 100501, at *3; *see also C.B.*, 2019 WL 3162177, at *5 (explaining that district courts "have decided not to rely too heavily [on such] affidavits, since they may only provide isolated examples of billing rates of a few lawyers, may leave out context that rationalizes the rates billed, and may even list rates that are not in practice ever paid by reasonable, paying clients").

The rates are higher than those advocated by Defendant, which relies virtually exclusively on fees awarded in other IDEA cases. That data is relevant and goes to one of the *Johnson* factors but cannot alone determine what is appropriate in this case. It suffers from the flaw of circularity: if the only factor a court considered in determining whether a rate was reasonable was whether another court considered that rate to be reasonable then no court would ever have to ask what the reasonable rate was in the community. The only rate that would be reasonable would be one that was approved in the past, no matter how removed and distant that rate was from the rate able to be commanded by a lawyer performing comparable work in the community. The approach of "[r]ecycling rates awarded in prior cases without considering whether they continue to prevail may create disparity between compensation available under [the fee-shifting statute] and compensation available in the marketplace." *Farbotko v. Clinton Cnty. of New York*, 433 F.3d 204, 209 (2d Cir. 2005). This approach defeats the objective of the fee-shifting feature of the IDEA to "'attract competent counsel' to a field where many plaintiffs with

meritorious cases could not afford to pay such counsel themselves." *G.T.*, 2020 WL 1516403, at

*10 (alteration omitted) (quoting *Simmons*, 575 F.3d at 176).  It also "runs the risk of freezing

fee awards in place," preventing courts from ever increasing the fee award based on marketplace

changes for the simple, and improper, reason that the increased rate is different from an earlier

rate.  *M.H.*, 2021 WL 4804031, at *12.

     **B.**    **Hours Billed**

     After determining a reasonable hourly rate, the Court multiplies "that rate by the number

of hours reasonably expended to determine the presumptively reasonable fee."  *Lilly*, 934 F.3d at

230.  "To calculate . . . attorneys' fees, courts apply the lodestar method, whereby an attorney fee

award is derived by multiplying the number of hours reasonably expended on the litigation by a

reasonable hourly rate."  *A.R. ex rel. R.V.*, 407 F.3d at 79 (internal quotation marks omitted and

alteration adopted) (quoting *G.M. v. New Britain Bd. of Educ.*, 173 F.3d 77, 84 (2d Cir. 1999)).

"[T]here is . . . a strong presumption that the lodestar figure represents a reasonable fee."  *Id.*

(internal quotation marks omitted) (quoting *G.M.*, 173 F.3d at 84); *accord I.B. ex rel. Z.B. v.*

*N.Y.C. Dep't of Educ.*, 336 F.3d 79, 80 (2d Cir. 2003).

     The Court's task is to make "a conscientious and detailed inquiry into the validity of the

representations that a certain number of hours were usefully and reasonably expended."  *Lunday*

*v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994).  However, in reviewing a fee application,

"trial courts need not, and indeed should not, become green-eyeshade accountants."  *Fox*, 563

U.S. at 838.  "The essential goal in shifting fees (to either party) is to do rough justice, not to

achieve auditing perfection."  *Id.*  "[T]he fee applicant bears the burden of establishing

entitlement to an award, and documenting the appropriate hours expended and hourly rates."

*Hensley*, 461 U.S. at 437; *see also C.D. v. Minisink Valley Cent. Sch. Dist.*, 2018 WL 3769972,

at *7 (S.D.N.Y. Aug. 9, 2018).  The fee applicant must "establish his hourly rate with

satisfactory evidence—in addition to the attorney's own affidavits." *Chambless*, 885 F.2d at 1059 (internal quotation marks and citation omitted).

The Court has reviewed the time records and Defendant's objections to Plaintiff's time in detail. With respect to the administrative stage, Defendant argues that Sterne's travel time on Case Number 178593 should be reduced from 9.5 hours to 2 hours (one hour in each direction) and that Kopp's travel time on Case Number 185439 should be reduced from 10 hours to 2 hours (one hour in each direction). Dkt. No. 63 at 19, 21. Plaintiff agreed to reduce Sterne's travel time from 9.5 hours to 2.85 hours and to reduce Kopp's travel time from 10 hours to 3 hours but did not limit the hours to the extent argued by Defendant. Dkt. No. 73 ¶¶ 30, 41. The Court accepts Defendant's argument, and Plaintiff's request should be further revised to reflect that additional reduction. *See M.H.*, 2021 WL 4804031, at *18 ("Defendant's argument that travel time should be limited to 1 hour in each direction is well-founded." (citing cases)). The records also reflect that Kopp spent 0.9 hours on Case Number 185439 and 0.8 hours on Case Number 196238 on administrative tasks related to the implementation of the FOFDs. *See* Dkt. No. 63 at 22–24; Dkt. No. 73 ¶¶ 52, 54. That work goes beyond supervisory work and could have been performed by the most senior paralegal; the rate with respect to 1.7 hours of Kopp at the administrative level should be reduced to $125 an hour rather than the $250 for his work as an attorney. *See C.B.*, 2019 WL 3162177, at *11 (approving award for paralegal time spent implementing results of hearing). The Court has reviewed the remainder of the time spent at the administrative level is satisfied that it is reasonable.

The hours billed on the federal level were excessive. Although counsel is entitled to fees reasonably incurred in litigating its right to fees, *see D.B. ex rel. S.B.*, 2019 WL 6831506, at * 6, "[t]the determination of fees 'should not result in a second major litigation,'" *Fox*, 563 U.S. at

838 (quoting *Hensley*, 461 U.S. at 437).  At the federal level, Defendant asks the Court to reduce

two hours of Kopp's time that it characterizes as administrative to zero hours and to reduce the

48.2 hours spent briefing the instant motion papers to 21.5 hours.  Dkt. No. 63 at 24–25.  The

two hours of Kopp's time includes limited time spent on implementation issues.  After litigation

had been commenced, it was reasonable for that particular work to be conducted by an

attorney—albeit a junior attorney.  The time will not be reduced.  *See M.H.*, 2021 WL 4804031,

at *21 ("Counsel also is entitled to fees and costs incurred in enforcing the decision of an IHO

and a FOFD.").  The hours spent on the instant motion, however, were unreasonably high—

though not to the extent argued by Defendant.  Much of the work done on the instant briefing

reiterates arguments made by CLF in other cases.  The work should not have taken the time that

was billed.  CLF is not entitled to be paid repeatedly for essentially reiterating arguments it has

made before.  Some of the work, however, was case-specific—devoted either to discussion of the

individual facts of this case and an explanation of how the prevailing law applies to this case,

arguing why the Court should reconsider views it had previously expressed, and revising

arguments and declarations to address issues previously identified by this Court and other courts

in this District.  That time was reasonably spent.  The Court will reduce the time spent on the

instant motion by 15 hours to 33.2 hours rather than the 21.5 requested by Defendant.

C.    **Additional Fees and Costs Requested in the Reply Papers**

After having first requested $139,171.36 (since reduced) in fees and costs in Plaintiff's

opening papers, Dkt. No. 51 ¶ 90, Plaintiff seeks an additional award of fees and costs of

$18,935 for work performed between March 4, 2022 (shortly after Plaintiff's summary judgment

motion was filed) and April 29, 2022 (when Plaintiff's reply papers were filed), Dkt. No. 73

¶ 60; Dkt. No. 73-11.  The fee request is based on a total of 46.9 hours billed by Plaintiff's

counsel in connection with, among other things, a motion to compel, the reply papers, and time spent preparing timesheets.[11] Dkt. No. 73 ¶ 60; Dkt. No. 73-11.

The time is excessive.  The motion to compel was unnecessary.  It sought information that could have been obtained by telephone calls between counsel without the need to seek the Court's intervention.  Counsel is entitled to 0.5 hours of Kopp's time for that motion—the time it would have taken for a call between counsel.  *See* Dkt. Nos. 65–70.  Counsel also submitted a ten-page reply memorandum of law and forty pages of declarations (not including attached exhibits) in response to Defendant's opposition to the motion for summary judgment.  *See* Dkt. Nos. 72–74.  The forty pages of declarations were all in excess of the page limits the Court set for reply papers and improperly included argument.  *See* Dkt. No. 79.  Most of the two declarations were devoted to arguments responding to Defendant's opposition memorandum and declarations, articles, and reports that could have been submitted in connection with Plaintiff's opening papers (or, if not, should have been submitted only upon motion).  Much of the argument was also repetitive of arguments made in the reply memorandum of law.  Defendant argues that Plaintiff should receive attorneys' fees only for the time spent on the reply memorandum of law and argues that the reasonable hours for that memorandum would not exceed five.  That argument does not take into account the fact that declarations included information responding to Defendant's detailed attack in their opposition papers on specific time entries of Plaintiff; Plaintiff is entitled to reasonable attorneys' fees for the time spent explaining

---

[11] During this time period, Plaintiff's counsel also submitted an unnecessary "pre-motion (to strike [Defendant's] Memorandum of Law) letter" requesting that the Court set a deadline by which Defendant must re-submit its memorandum of law with a table of authorities even though Defendant's counsel indicated that he would prepare and send the table of authorities.  Dkt. No. 62.  According to the Court's review of the billing records, Kopp billed 0.5 hours in relation to this filing.  Dkt. No. 73-11.

why the hours spent at the administrative level and at the federal level were reasonable. But those hours should not be many—it would not have taken research for counsel to recall how he spent time and why the request he had made was reasonable. Accordingly, the Court will award attorneys' fees for ten hours—4.2 hours at the Andrew Cuddy billing rate and the remainder at the Benjamin Kopp billing rate—and fees for 0.75 hours of paralegal time, which is generous for the time it should have taken to prepare the additional time sheets.

### D.  Unreasonable Protraction

Plaintiff argues that the Court should not reduce CLF's billed time or hourly rates under 20 U.S.C. § 1415(i)(3)(F) because the Defendant "unreasonably protracted the final resolution of the action or proceeding" under Section 1415(i)(3)(G). Dkt. No. 53 at 10. Plaintiff argues that the Department "failed to appoint an IHO for much longer than the 75 days required to complete due process, failed to hold mandatory resolution meetings, and withheld—even misrepresented—its positions until the actual hearing dates, frivolously refused to concede, and delayed implementation for several months, including well beyond this action's commencement." *Id.* at 16.

The statute does not entitle Plaintiff to more than an award of reasonable attorneys' fees and costs even if the state or local educational agency unreasonably protracted the proceedings. *See M.H.*, 2021 WL 4804031, at *25. "That conclusion follows from the plain language of the statute and established principles of statutory interpretation. Before one ever gets to Section 1415(i)(3)(F), the statute instructs that the Court's discretion is limited to awarding a 'reasonable' attorney's fee and that the fee must be based on rates prevailing in the community in which the action or proceeding arose, as determined by subsection (C)." *Id.* "Subparagraph (G), when found applicable, does not mandate that the district court abandon its discretion to ensure that fees are reasonable." *Somberg ex rel. Somberg v. Utica Cnty. Sch.*, 908 F.3d 162, 181–82

(6th Cir. 2018).  In any event, the undisputed evidence does not reflect that the Department unreasonably protracted the proceedings.  The record reflects that many of the adjournments were consented to by Plaintiff and, in any event, that the IHO found that there was no delay that prejudiced I.E.  Although Plaintiff asserts that Defendant frivolously refused to concede positions, the Court cannot conclude as a matter of law that it was wrongful for the Department to ask that K.O. and I.E. offer evidence at the hearings on an issue as to which they had the burden of proof.  Thus, even if the Court were required by Subsection (G) to award fees greater than those based on rates prevailing in the community where that provision applied, it would not make a difference to the attorneys' fee award in this case.  *See A.G.*, 2021 WL 4896227, at *10 (noting that evidence does not establish that defendant engaged in unreasonable protraction); *M.H.*, 2021 WL 4804031, at *25 (expressing doubt that Department's actions prolonged the proceedings); *S.J.*, 2021 WL 100501, at *5 (finding that Department did not unreasonably protract the proceedings).

## E.    Costs

Plaintiff's initial request included $1,571.68 in expenses at the administrative level, including for lodging, mileage and parking costs, and duplicating at fifty cents per page.  Dkt. No. 51 ¶ 90.  Defendant objected to the costs and expenses as unreasonable, arguing that CLF should not be compensated for lodging, mileage, and parking costs and should be compensated for photocopying costs at only ten cents per page.  Dkt. No. 63 at 25.  In response, Plaintiff reduced its request for reimbursement of costs and expenses to those costs and expenses approved in *Y.G.* and in *M.H.*  Dkt. No. 73 ¶¶ 59–60; *see also Y.G.*, 2022 WL 1046465, at *4; *M.H.*, 2021 WL 4804031, at *27.  Specifically, Plaintiff eliminated its request for reimbursement for lodging and meals as well as for faxing and applied a 70% reduction to travel expenses in the

form of mileage, tolls, and parking.  Dkt. No. 73 ¶¶ 59–60.  It also reduced the copying costs to ten cents per page.  *Id.*  The revised expenses and costs are approved.

### F.     Interest

Plaintiff argues that she should receive pre-judgment interest to account for the time-value of money and Defendant's delay in paying the reasonable attorneys' fees to which Plaintiff is statutorily entitled.  The Court previously has determined that pre-judgment interest is not available on an award of attorneys' fees under the IDEA.  *See M.H.*, 2021 WL 4804031, at *30–31.  Contrary to Plaintiff's argument, *see* Dkt. No. 72 at 10, that decision does not run afoul of the Second Circuit's decision in *Doe v. East Lyme Board of Education*, 962 F.3d 649, 661–62 (2d Cir. 2020).  The portion cited of that decision involves the award of pre-judgment interest on the reimbursement of the parents' expenses not the distinct question whether prejudgment interest is available on an attorneys' fee award.  *Id.*  Even if the Court has discretion to award pre-judgment interest, it would find that Plaintiff is adequately compensated by the award as modified.  *See S.J. v. N.Y.C. Dep't of Educ.*, 2022 WL 1409578, at *1.  However, Plaintiff is entitled to post-judgment interest.  *See A.G.*, 2021 WL 4896227, at *11.

## CONCLUSION

The motion for summary judgment is GRANTED IN PART and DENIED IN PART, and Plaintiff is awarded attorneys' fees and costs, plus post-judgment interest at the applicable statutory rate.

Plaintiff is directed to submit a revised calculation of fees and costs consistent with this Opinion by **June 9, 2022**.  Plaintiff shall submit that calculation to Defendant one week prior to submitting it to the Court and shall indicate in the submission (without argument) whether Defendant agrees that the calculations are consistent with the Court's Opinion.  Counsel also is

directed to submit a letter to the Court by **June 9, 2022** informing the Court whether it may close the case and enter judgment and, if so, to submit a proposed form of judgment.

The Clerk of Court is respectfully directed to close Dkt. No. 50.


SO ORDERED.

Dated: May 26, 2022
New York, New York

LEWIS J. LIMAN
United States District Judge